

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
08/24/2017

| | | |
|---|---|---|
| IN RE: | § | |
| **ULTRA PETROLEUM CORP.,** *et al* | § | **CASE NO: 16-32202** |
| Debtor(s) | § | |
| | § | **CHAPTER  11** |
| | § | |
| **JONAH LLC,** *et al* | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 16-3278** |
| | § | |
| **ULTRA PETROLEUM CORP.,** *et al* | § | |
| Defendant(s) | § | |

## <u>MEMORANDUM OPINION</u>

Jonah LLC *et al* filed this adversary proceeding against Ultra Petroleum Corporation *et al* seeking declaratory judgments regarding the validity and extent of its various overriding royalty interests (the "ORRIs").  Generally, an ORRI is a cost-free interest in production carved out of a working interest.  Jonah also seeks a declaration that Ultra failed to properly pay the ORRIs, and that any underpaid ORRIs did not become property of Ultra's bankruptcy estates.  Jonah and Ultra filed competing motions for partial summary judgment.

The Wyoming Royalty Payment Act ("WRPA") addresses what costs of production may be deducted from an ORRI.  The relevant portion of the WRPA only applies if the ORRI assignments fail to specify the deductible costs of production.  Jonah asserts that the instruments creating Classes 2, 3, and 4 of its ORRIs do not have the requisite specific language regarding what costs of production may be deducted from Jonah's ORRI payments.[1]  Conversely, Ultra argues that those ORRI classes are sufficiently specific to be removed from the confines of the relevant WRPA provisions.  Alternatively, Ultra asserts that the WRPA cannot be applied

---

[1] 28 ORRIs are in dispute in this proceeding.  Jonah has classified the 28 ORRIs into 5 classes.  For convenience, the Court adopts Jonah's classification.

retroactively to replace the bargained-for terms of the ORRIs executed decades before the WRPA's enactment.

Ultra's and Jonah's competing motions for partial summary judgment are each denied.

## **Background**

Ultra owns working interests in federal oil and gas leases located in the Pinedale Field of Sublette County, Wyoming.  (ECF No. 1 at 5).  These leases stem from fifteen Bureau of Land Management (the "BLM") leases issued between 1950 and 1952.  (ECF No. 1 at 6; ECF No. 49 at 9).  Jonah owns ORRIs burdening some of Ultra's leases.  (ECF No. 1 at 6).  The ORRIs at issue in this proceeding are defined by 28 separate instruments.  (ECF No. 49 at 10).  Jonah categorizes these instruments into five separate classes:

i.  Class 1 includes ORRIs originally created through three assignments by Donald and Patricia Anderson to Blue Royalties, Inc. in 1952.  (ECF No. 1 at 6).  These assignments stated that the ORRIs "shall be computed and paid at the same time and in the same manner as royalties payable to the United States . . . ."  (ECF No. 1-1 at 1).

ii.  Class 2 includes ORRIs reserved by the Andersons in 1955.  (ECF No. 1 at 6).  The Andersons assigned to third parties their entire working interest in certain BLM leases, reserving for themselves the Class 2 ORRIs using a BLM form of assignment.  (ECF No. 49 at 11).  Class 2 ORRIs include language that allows assignees to deduct from the value of oil or gas the "full amount of any taxes required to be paid . . . ."  (ECF No. 1-2 at 4).

iii.  Class 3 includes ORRIs reserved by Hondo Oil & Gas on September 5, 1978.  (ECF No. 1 at 7).  Hondo completed 14 assignments of its working interests in the BLM leases in exchange for a reservation of an ORRI of 3-1/8 of 8/8ths using a BLM form of assignment.  (ECF No. 1-3 at 1; ECF No. 49 at 11).  The forms of assignment do not include any other language describing how the ORRI should be computed.  (ECF No. 1-3).

iv.  Class 4 includes an August 1, 1951, assignment reserving an ORRI of one percent of all oil, gas, and other hydrocarbons produced on the covered property.  (ECF No. 1-4 at 1).  The form of assignment does not include language describing how the ORRI should be computed.  (ECF No. 1-4).

v.      Class 5 includes ORRIs carved out of portions of the working interest burdened by other classes of ORRIs.  (ECF No. 1 at 8, 9).  The Class 5 ORRIs are governed by an amendment executed in 2000 by McMurry Oil Company, Nerd Enterprises, Inc., Fort Collins Consolidated Royalties, Inc., and a group of ORRI owners.  The 2000 Amendment explicitly allows for the deduction of reasonable, actual costs of transportation incurred from the wellhead to the location of a sale from the proceeds of production when computing the Class 5 ORRIs.  (ECF No. 1-5 at 1).

Atlantic Richfield Company ("ARCO") and Burlington Resources & Gas Company LP originally owned the working interests burdened by these five classes of ORRIs.  (ECF No. 1 at 9).  Burlington's working interest was burdened by Classes 1, 2, 3, and 5 while ARCO's interest was burdened by Classes 1, 2, and 4.  (ECF No. 1 at 9).  In 1992, ARCO sold substantially all of its working interest to McMurry Oil, Nerd Enterprises, and Fort Collins Consolidated Royalties.  (ECF No. 1 at 9).  Burlington sold a majority of its working interest to Ultra in 1997; Ultra continues to own this portion.  (ECF No. 1 at 9).  An amendment to the ORRIs burdening the ARCO working interest was executed in 2000.  (ECF No. 1 at 9).  After the 2000 Amendment, the ARCO working interest was burdened only by Class 5.  In late 2014, Ultra acquired the ARCO working interest, making Ultra responsible for payment of the Class 5 ORRIs.  (ECF No. 1 at 10).

Ultra continues to own a large working interest in the Sublette County leases it originally acquired from Burlington Resources Oil & Gas Company LP in 1997.  (ECF No. 1 at 9).

In 2013, a dispute arose between Jonah and some of the Ultra defendants regarding the proper method of paying the Class 1, 2, 3, and 4 ORRIs burdening Ultra's working interest.  (ECF No. 1 at 11).  Jonah ultimately contended that the Class 1 ORRIs must be paid according to their express terms.  (ECF No. 1 at 11).  Conversely, Jonah claimed that the Class 2, 3 and 4 ORRIs were subject to the WRPA's definitions and payment provisions because they did not contain specific language providing how to pay the ORRIs.  (ECF No. 1 at 11).  The WRPA

defines an "overriding royalty" as "a share of production, free of the costs of production, carved out of the lessee's interest under an oil and gas lease . . . ."  WYO. STAT. § 30-5-304(a)(v).  "Costs of production" include

> all costs incurred for exploration, development, primary or enhanced recovery and abandonment operations including, but not limited to lease acquisition, drilling and completion, pumping or lifting, recycling, gathering, compressing, pressurizing, heater treating, dehydrating, separating, storing or transporting the oil to the storage tanks or the gas into the market pipeline.

WYO. STAT. § 30-5-304(a)(vi).  "Costs of production" do not include "the reasonable and actual direct costs associated with transporting the oil from the storage tanks to market or the gas from the point of entry into the market pipeline or the processing of gas in a processing plant."  WYO. STAT. § 30-5-304(a)(vi).

In response to Jonah's contentions, Ultra alleged that it had paid all of Jonah's ORRIs burdening its working interest in the same manner as the federal royalty interest.  (ECF No. 1 at 12).  Ultra argued that this payment calculation was justified by the language of the Class 1 ORRIs and the instruments creating Classes 2, 3, and 4.  (ECF No. 1 at 12).

On October 1, 2014, Jonah sued Ultra in Wyoming state court.  (Civil Action No. 8266). The parties agreed to allow discovery and summary judgment briefing on the proper deductions that may be taken under the Class 1, 2, 3, and 4 ORRI instruments as the first phase of the litigation.  (ECF No. 1 at 13).

Through discovery, Ultra first learned of the 2000 Amendment.  (ECF No. 1 at 13).  After acquiring the ARCO working interest, Ultra began paying the ORRIs burdening that interest. (ECF No. 1 at 14).  Based upon a belief that Ultra was under paying the Class 5 ORRIs, Jonah demanded an accounting from Ultra.  (ECF No. 1 at 14).  Receiving no response, Jonah filed a separate lawsuit on April 28, 2016, also in Wyoming state court.  (Civil Action No. 8428).

On April 29, 2016, Ultra filed for chapter 11 bankruptcy, staying the two Wyoming state court lawsuits.  (Case No. 16-32202).  Each of the Jonah plaintiffs filed timely proofs of claim in Ultra's bankruptcy case.  (ECF No. 1 at 15).

On December 19, 2016, Jonah filed this adversary proceeding seeking:

     i.     A declaratory judgment on the validity and scope of ORRI Classes 1, 2, 3, 4, and 5;

     ii.     A declaratory judgment that all unpaid ORRIs are property of Jonah;

     iii.     Damages for breach of contract and the WRPA by Ultra;

     iv.     Damages for conversion of Jonah's ORRIs by Ultra;

     v.     Damages for fraud and misrepresentations by Ultra;

     vi.     A constructive trust or equitable lien against proceeds from production attributable to Jonah's ORRIs;

     vii.     A requirement that Ultra disgorge and reimburse Jonah for Ultra's unjust enrichment at the expense of Jonah's ORRIs;

     viii.     An accounting of Jonah's ORRIs;

     ix.     A permanent injunction preventing Ultra from taking deductions not permitted under the underlying instruments or the WRPA; and

     x.     All other costs, penalties, and interest permitted by law.

(ECF No. 1 at 32–33).

On March 31, 2017, Jonah and Ultra filed competing motions for partial summary judgment in this adversary proceeding.  (ECF No. 48; ECF No. 49).  Jonah argued that: the 2000 Amendment applies only to Class 5 ORRIs; the Court is not bound by an interlocutory decision in a related state court proceeding; the assignments creating the Class 1 ORRIs contain specific language dictating how the ORRIs should be paid; the assignments creating the Class 2, 3 and 4 ORRIs do not have specific language dictating how they should be paid and thus the WRPA's

definition of "overriding royalty" applies to them; and the Class 5 ORRIs are subject to the specific language of the 2000 Amendment.  (ECF No. 48 at 2–3).

Ultra countered that the WRPA does not apply to any of the ORRI classes because: the assignments creating those classes either contain their own specific language dictating how the ORRIs should be paid or incorporate or reference specific federal royalty payment procedures; and that the WRPA's provisions cannot be applied retroactively to the ORRIs in order to modify the terms of the ORRI assignments.  (ECF No. 49 at 16–43).

The Court entertained oral arguments on the parties' motions for partial summary judgment on May 23, 2017.  After the hearing, the Court set a deadline of June 23, 2017, for the parties to file post-hearing briefs.

### Jurisdiction

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), and (O).

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  FED. R. BANK. P. 7056 incorporates FED. R. CIV. P. 56 in adversary proceedings.  A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case.  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party.  *Gorman v. Verizon*

*Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In cases involving the interpretation of a contract, summary judgment is only appropriate where the language of the contract is unambiguous. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996); *Cooper Indus., LLC v. Precision Castparts Corp.*, 2016 WL 4939565, at *6 (S.D. Tex. Sept. 14, 2016).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Ben-Levi v. Brown*, 136 S. Ct. 930 (2016). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Wheat v. Fla Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2). Moreover,

the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 326 (1986). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24. The non-moving party must cite to specific evidence demonstrating a genuine dispute. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof on an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Celotex*, 477 U.S. at 325. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Id.* at 324. The motion should be granted only if the non-movant cannot produce evidence to support an

essential element of its claim.   *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197

(5th Cir. 2005).

**Analysis**

***Do the WRPA payment provisions apply to Jonah's ORRIs?***

The primary dispute in this adversary proceeding is whether the underlying ORRI

instruments for Classes 2, 3, and 4 contain specific language regarding whether gathering and

other costs of production may be deducted from Jonah's ORRI payments.  The WRPA states that

"unless otherwise expressly provided for by specific language in an executed written agreement .

. . 'overriding royalty' . . . shall be interpreted as defined" by the WRPA.  WYO. STAT. § 30-5-

305(a).  Section 30-5-304 of the WRPA defines "overriding royalty" as "a share of production,

*free of the costs of production*, carved out of the lessee's interest under an oil and gas lease."

WYO. STAT. § 30-5-304(a)(v) (*emphasis added*).   As defined above, "costs of production"

include all of the costs incurred for exploration, development, recovery, and abandonment

operations under the underlying leases—not the costs associated with transporting the oil or gas

to market.  WYO. STAT. § 30-5-304(a)(vi).

Ultra argues that the applicable written agreements, not the WRPA payment provisions,

dictate what expenses Ultra may deduct from Jonah's ORRIs.  Specifically, Ultra contends that

the WRPA is a "gap-filler" statute, and that its definitions of allowable costs of production are

inapplicable where deductible costs are provided for in an executed written agreement.  (ECF

No. 49 at 16).  The assignments creating the ORRIs at issue either expressly state that the federal

royalty language regulations apply when computing payments or incorporate the terms and

obligations of the underlying BLM leases.  (ECF No. 49 at 16).  Ultra argues that, because the

specific language needed to avoid the application of the WRPA's definitions may be

incorporated into the underlying assignments from other instruments, the incorporation of the federal royalty and lease language here constitutes specific language.  (ECF No. 49 at 16–18).  Such a position was explicitly adopted by the Wyoming federal district court as part of its opinion in *Followwill v. Merit Energy Co.*, 371 F. Supp. 2d 1305 (D. Wyo. 2005).

Jonah argues that the WRPA cost of production provisions dictate what expenses Ultra may deduct from the Class 2, 3, and 4 ORRIs.  In contrast to Ultra's assertion, Jonah contends that the references to federal royalty standards in the agreements creating their ORRIs do not show an intention to incorporate those standards.  (ECF No. 54 at 7).  Instead, the referenced language only recognizes what occurs by operation of property law.  (ECF No. 54 at 7).  Jonah additionally argues that the Wyoming Supreme Court in *Cabot Oil & Gas Corp. v. Followill*, 93 P.3d 238, 242 (Wyo. 2004), chose not to adopt the federal district court's ruling in *Followill* and rejected Ultra's reference and incorporation argument in its prior decision.[2]

Both Ultra and Jonah's partial summary judgment motions regarding ORRI Classes 2 and 4 are based upon an incorrect calculation of Jonah's ORRIs.  Because both sides' positions rely on a fundamental calculation error, both motions must be denied.  The assignments creating Classes 2 and 4 state that the ORRIs in those classes are computed and paid pursuant to the market price in the field or at the wellhead.  (ECF No. 49-9 at 4; ECF No. 49-32 at 1).  Ultra and Jonah fail to begin their analyses by utilizing the market price in the field or at the wellhead. Instead, they both utilize the actual price received for the gas that was sold at a location that is neither in the field or at the wellhead.

Which, if any, federal regulations would apply to Jonah's ORRIs is dependent on whether the value of gas is set at the wellhead or at the delivery point.  Regardless of whether the

---

[2] The state case identifies the Plaintiff as "Dorman Followill" (a single "w"); the federal case identifies the Plaintiff as "Dorman Followwill" (two "w's").

federal regulations should be applied, the analysis of this dispute must begin with the correct amount of revenue.  Accordingly, granting summary judgment to Jonah or Ultra on whether the Class 2 or 4 assignments contain specific language regarding if and what gathering and other costs of production may be deducted from Jonah's ORRI payments is inappropriate.

With respect to ORRI Class 3, it is unclear from the face of the assignments whether the revenue should be based on a wellhead price.  Neither side addresses the issue of whether the Class 3 assignments require pricing at the wellhead or field.  Until this issue is fully addressed, summary judgment on whether the underlying assignments for ORRI Class 3 contain specific language regarding if and what gathering and other costs of production may be deducted from Jonah's ORRI payments is inappropriate.

Ultra's and Jonah's partial motions for summary judgment are each denied.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **August 24, 2017.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE